IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUSTIN MILES COOTE,** | : | |
| Plaintiff | : | No. 1:24-cv-01118 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| **JOHN DOE 1, PENNSYLVANIA** | : | |
| **BOARD HEARING EXAMINER, et al.,** | : | |
| Defendants | : | |

# MEMORANDUM

This is a prisoner civil rights case in which pro se Plaintiff Justin Miles Coote ("Coote"), a convicted state prisoner, filed a complaint asserting claims under 42 U.S.C. § 1983 for violations of his rights under the United States and Pennsylvania Constitutions against employees and board members of the Pennsylvania Board of Probation and Parole ("Parole Board"), arising out of a December 10, 2021 decision in which the Parole Board allegedly (1) ordered him to serve twelve (12) months' imprisonment after he received a new criminal conviction and (2) extended his maximum sentence date. Coote has also applied for leave to proceed in forma pauperis. Pursuant to the Prison Litigation Reform Act ("PLRA"),[1] the Court has conducted a mandatory screening of the complaint. For the reasons set forth below, the Court will grant Coote's application for leave to proceed in forma pauperis and dismiss his complaint without leave to amend.

I.      BACKGROUND

Coote commenced this matter by filing a complaint on July 3, 2024, naming as Defendants several Doe defendants from the Parole Board: two (2) Parole Board hearing

---

[1] Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

examiners; one (1) Parole Board technician; and eight (8) Parole Board Members.[2]  (Doc. No. 1 at 1–2.)  Coote neither remitted the filing fee nor applied for leave to proceed in forma pauperis along with his complaint; as such, an Administrative Order issued on July 8, 2024, directing Coote to either remit the filing fee or apply for leave to proceed in forma pauperis within thirty (30) days or risk dismissal of this action.  (Doc. No. 3.)  Coote then filed a certified application for leave to proceed in forma pauperis ("IFP Application"), as well as a certified prisoner trust fund account statement, both of which the Clerk of Court docketed on July 29, 2024.  (Doc. Nos. 5, 6.)

In the complaint, Coote alleges that he was incarcerated in a Pennsylvania state prison following his sentencing in the Court of Common Pleas of Monroe County in early November 2012.[3]  (Doc. No. 1 ¶ 11.)  His original minimum sentence date was October 1, 2015, and his

---

[2] The federal "prisoner mailbox rule" provides that a pro se prisoner's submission is deemed filed "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk."  See Houston v. Lack, 487 U.S. 266, 276 (1988).  Unfortunately, when filing his complaint, Coote did not include a declaration stating when he delivered his complaint to prison authorities for mailing to the Clerk of Court.  Nonetheless, the envelope containing the complaint is postmarked July 3, 2024.  (Doc. No. 1 at 7.)  As such, the Court uses July 3, 2024, as the complaint's filing date, even though the Clerk of Court did not docket it until July 8, 2024.  Cf. Fed. R. App. P. 4(c)(1)(A)(ii) (providing that evidence such as a postmark may establish the date of filing of a notice of appeal by a prisoner).

[3] According to the Unified Judicial System of Pennsylvania's Web Portal for criminal matters (https://ujsportal.pacourts.us) ("Portal"), this case was docketed as Commonwealth v. Coote, No. CP-45-CR-0001739-2012 (Monroe Cnty. Ct. Com. Pl. filed Aug. 2, 2012).  The Court takes judicial notice of the docket sheet for this case as it is a public state court record.  See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1197 (3d Cir. 1993) (explaining that matters of public record district court may consider when resolving motion to dismiss "include criminal case dispositions such as convictions or mistrials"); see also Donahue v. Dauphin County, No. 17-cv-01084, 2017 WL 3405112, at *1 n.1 (M.D. Pa. June 27, 2017) ("This publicly available state criminal docket, available online . . ., is a public record of which the Court may take judicial notice in considering dismissal for failure to state a claim." (citations omitted)), report and recommendation adopted, 2017 WL 3394163 (M.D. Pa. Aug. 8, 2017), aff'd sub nom. Donahue v. Dauphin County Solics. Off., 788 F. App'x 854 (3d Cir. 2019) (unpublished); Pearson v. Krasley, No. 16-cv-00066, 2017 WL 2021061, at *1 (E.D. Pa. May 11,

maximum sentence date was October 1, 2018. (Id. ¶ 12.) Coote was granted early parole on August 28, 2014; however, he "was summoned for a new criminal offense of theft by unlawful taking on October 17, 2014."[4] See (id. ¶¶ 13–14). This summons did not result in a new "arrest" by the Parole Board, so Coote "continued [his] parole until his arrest in New York City on December 22, 2018." See (id. ¶ 15). On the same date, the Parole Board issued a technical violation for Coote, despite his sentence allegedly having expired eighty-one (81) days prior to the issuance of the violation. (Id. ¶ 16.) At some point thereafter, he was extradited from New York to Pennsylvania, which Coote believes was illegal due to the expiration of his original maximum sentence date. (Id.) On December 10, 2021, the Parole Board ordered Coote to serve twelve (12) months' incarceration on his parole violation, and his maximum sentence date was changed to September 12, 2024.[5] (Id. ¶ 17.)

Based on these allegations, Coote raises claims under Section 1983 for violations of his procedural and substantive due process rights under the Fourteenth Amendment to the United States Constitution, violations of his due process rights under the Pennsylvania Constitution, and

---

2017) ("A court may also consider public records such as criminal dockets."), aff'd, 715 F. App'x 112 (3d Cir. 2017) (unpublished).

[4] The Court takes judicial notice that the Portal indicates that a criminal complaint was filed against Coote on October 20, 2014, charging him with numerous offenses, including robbery, aggravated assault, and escape, for acts that occurred on October 17, 2014, in Monroe County. See Commonwealth v. Coote, No. MJ-43302-CR-0000305-2014 (Monroe Cnty. Mag. Dist. Ct. filed Oct. 20, 2014). It appears that Coote was first detained on those charges in February 2019. See id. The charges were bound over for trial in March 2019, and Coote ultimately pleaded guilty to theft by unlawful taking on October 27, 2021, after which he was sentenced to a minimum of six (6) months to a maximum of twelve (12) months' incarceration. See Commonwealth v. Coote, No. CP-45-CR-0000619-2019 (Monroe Cnty. Ct. Com. Pl. filed Mar. 12, 2019).

[5] Coote does not explain how being ordered to serve twelve (12) months' incarceration in December 2021 led to a maximum sentence date of September 2024.

violations of his right to be free from cruel and unusual punishment under the Eighth Amendment.[6]  (Id. ¶¶ 19–21, 23.)  He seeks monetary damages and his immediate release from custody.  (Id. at 6.)

## II. LEGAL STANDARDS

### A. Applications for Leave to Proceed in Forma Pauperis

Under 28 U.S.C. § 1915(a)(1), the Court "may authorize the commencement . . . of any suit, action or proceeding, civil or criminal, . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor."  See id.  This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." Neitzke v. Williams, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).  Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. [Deutsch v. United States, 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in forma pauperis by filing in good faith an affidavit stating, among other things, that [they are] unable to pay the costs of the lawsuit.  Neitzke, 490 U.S. at 324, 109 S.Ct. 1827.

See Douris v. Middletown Twp., 293 F. App'x 130, 131–32 (3d Cir. 2008) (unpublished) (footnote omitted).

A litigant can show that they are unable to pay the costs of the lawsuit "based on a showing of indigence."  See Deutsch, 67 F.3d at 1084 n.5.  The Third Circuit Court of Appeals has not defined what it means to be indigent; nevertheless, "[a] plaintiff need not 'be absolutely destitute to enjoy the benefit of the statute.'"  See Mauro v. N.J. Supreme Ct. Case No. 56,900,

---

[6] As explained below, the Court also construes the complaint as containing Section 1983 claims against Defendants for false imprisonment in violation of the Fourth Amendment.

4

238 F. App'x 791, 793 (3d Cir. 2007) (unpublished) (quoting Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339 (1948)).  Some district courts have explained that all a litigant needs to show is that because of their poverty, they cannot afford to pay for the costs of the litigation and provide themselves with the necessities of life.  See, e.g., Rewolinski v. Morgan, 896 F. Supp. 879, 880 (E.D. Wis. 1995) ("An affidavit demonstrating that the petitioner cannot, because of his poverty, provide himself and any dependents with the necessities of life is sufficient."); Jones v. State, 893 F. Supp. 643, 646 (E.D. Tex. 1995) ("An affidavit to proceed in forma pauperis is sufficient if it states that one cannot, because of poverty, afford to pay for the costs of litigation and still provide for him- or herself and any dependents.").

  B.  **Screening the Complaint**

Under 28 U.S.C. § 1915A, this Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  See 28 U.S.C. § 1915A(a).  If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint.  See id. § 1915A(b)(1).  The Court has a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis.  See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . .").

In reviewing legal claims under Sections 1915A(b) or 1915(e)(2), the Court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See, e.g., Smithson v. Koons, No. 15-cv-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1) [and] § 1915(e)(2)(B)(ii) . . . is the same as that for dismissing a

5

complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), report and recommendation adopted, 2017 WL 3008559 (M.D. Pa. July 14, 2017); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a complaint must set out "sufficient factual matter" to show that the plaintiff's claims are facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. See id.; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a pro se litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Therefore, a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted)

(quoting Estelle, 429 U.S. at 106). This means the Court must "remain flexible, especially 'when dealing with imprisoned pro se litigants . . . .'" See Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244–45 (3d Cir. 2013))). Yet, conclusory allegations will not suffice. See Iqbal, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting Twombly, 550 U.S. at 555)).

Additionally, when construing a pro se plaintiff's complaint, the court will "'apply the relevant legal principle even when the complaint has failed to name it.'" See Vogt, 8 F.4th at 185 (quoting Mala, 704 F.3d at 244). However, pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" See id. (quoting Mala, 704 F.3d at 245).

    C.    **Section 1983**

Section 1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. This statute states, in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

III.    DISCUSSION

    A.    The IFP Application

After reviewing the IFP Application and certified prison trust fund account statement, it appears that Coote is unable to pre-pay the costs of this civil rights action. Therefore, the Court will grant the IFP Application and allow him to proceed in forma pauperis.[7]

    B.    Screening of the Complaint

        1.    Coote's Request to be Immediately Released from Incarceration

Among Coote's requests for relief is a request that he be immediately released from state prison. (Doc. No. 1 at 6.) This request for relief is not cognizable in a civil rights action and must instead be pursued through a petition for a writ of habeas corpus. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); Hope v. Warden York County Prison, 972 F.3d 310, 323 (3d Cir. 2020) ("Where a petitioner seeks release from detention, habeas (not a § 1983 action seeking release) is proper.").[8]

---

[7] However, because Coote is a prisoner, he is advised that he will be obligated to pay the filing fee in installments in accordance with the PLRA. See 28 U.S.C. § 1915(b).

[8] In Hope, the Third Circuit noted that "where a complaint seeks both damages pursuant to § 1983 and habeas relief, the damages action should be stayed while habeas is exhausted." See 972 F.3d at 323 (citing Tedford v. Hepting, 990 F.2d 745, 749 (3d Cir. 1993)). The Court concludes that a stay of this matter is not warranted because, as explained infra, Coote has failed to state a plausible claim for damages. The Court does not express an opinion on the merits of any habeas petition should Coote file it.

### 2. Section 1983 Official-Capacity Claims

It is unclear whether Coote asserts official- and individual-capacity Section 1983 claims against Defendants. Nevertheless, to the extent he asserts official-capacity Section 1983 claims for monetary damages against Defendant Parole Board employees and members, the Eleventh Amendment of the United States Constitution bars these claims.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." See U.S. Const. amend. XI. This Amendment

> has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court. Indeed, it has been recognized for over two hundred years that a state's immunity from suit in federal court is a fundamental principle of our constitutional structure that preserves, as intended by the Framers, the respect and dignity of the states and protects the ability of the states "to govern in accordance with the will of their citizens."

See Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002) (quoting Alden v. Maine, 527 U.S. 706, 751 (1999)).

Eleventh Amendment immunity extends to all state agencies, departments, and entities "having no existence apart from the state." See Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) (citation omitted). As such, the Parole Board, as an administrative agency of the Commonwealth of Pennsylvania, shares in the Commonwealth of Pennsylvania's Eleventh Amendment immunity. See Spuck v. Pa. Bd. of Prob. & Parole, 563 F. App'x 156, 158 (3d Cir. 2014) (unpublished) ("As the District Court correctly determined, the Eleventh Amendment affords the [Parole Board] protection from suit in an action brought pursuant to 42 U.S.C. § 1983."). The Eleventh Amendment also bars claims for monetary relief against state officials

9

acting in their official capacities because such claims are essentially claims against the employing government agency. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."); A.W. v. Jersey City Pub. Schs., 341 F.3d 234, 238 (3d Cir. 2003) (explaining that Eleventh Amendment immunity "extends to state agencies as well as state officials sued in their official capacities for monetary damages").[9] Therefore, the Court will dismiss Coote's Section 1983 official-capacity claims for monetary damages against Defendants.

### 3. Section 1983 Individual-Capacity Claims

#### a. The Favorable Termination Rule Bars the Claims

Coote's Section 1983 individual-capacity claims against Defendants for violations of his constitutional rights are based on the premise that Defendants wrongfully determined that he had violated parole and then reincarcerated him despite his original maximum sentence having expired. Because Coote is seeking to recover damages under Section 1983 for

> allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, [he] must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the

---

[9] However, "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts." See Hafer v. Melo, 502 U.S. 21, 31 (1991).

invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

See Heck v. Humphrey, 512 U.S. 477, 486–87 (1994).

Here, any finding in favor of Coote would necessarily render his parole revocation and subsequent incarceration invalid, and Coote has not alleged that his parole revocation has been somehow overturned.  As such, Coote cannot maintain his Section 1983 individual-capacity claims against Defendants.  See Williams v. Consovoy, 453 F.3d 173, 177 (3d Cir. 2006) (holding that Heck applied and barred plaintiff's Section 1983 claim for damages based on Parole Board's decision to revoke his parole and reincarcerate him); Johnson v. Mondrosch, 586 F. App'x 871, 873 (3d Cir. 2014) (unpublished) (determining that district court properly concluded that Heck barred plaintiff's "claims regarding his parole revocation").

b.     Other Grounds Supporting Dismissal of Coote's Claims

Even if Heck did not bar Coote's Section 1983 individual-capacity claims against Defendants, the Court would still dismiss these claims because Coote fails to state a plausible claim for a Fourth, Eighth, or Fourteenth Amendment violation.  As for the Fourth Amendment, the Court construes the complaint as possibly containing a Fourth Amendment claim for false imprisonment.  See (Doc. No. 1 ¶ 18 (referencing "wrongful imprisonment")).  "To state a claim for false imprisonment, a plaintiff must establish: (1) that [they were] detained; and (2) that the detention was unlawful."  James v. City of Wilkes-Barre, 700 F.3d 675, 682–83 (3d Cir. 2012) (citing Wallace v. Kato, 549 U.S. 384, 389 (2007)); see also Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) ("[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest."); Brockington v. City of Philadelphia, 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005) (explaining that false arrest and false imprisonment are "nearly identical claims").

11

As explained more infra, the facts alleged do not support Coote's allegation that the Parole Board was without jurisdiction to detain him and do not support a claim for unlawful detention. In addition, Coote has not alleged that Defendants (or any Parole Board agents) lacked probable cause to determine that he violated the terms of his parole. See Heilman v. W. Ponessa & Assocs., No. 07-cv-01308, 2008 WL 275731, at *9 (M.D. Pa. Jan. 30, 2008) ("To make out a Fourth or Fourteenth Amendment claim, whether based on a theory of false arrest, false imprisonment, or malicious prosecution, [the plaintiff] must demonstrate that revocation of his parole and his subsequent arrest were accomplished without probable cause."), aff'd sub nom. Heilman v. T.W. Ponessa and Assoc., No. 08-1667, 2009 WL 82707 (3d Cir. Jan. 14, 2009) (unpublished). Accordingly, Coote has not pleaded a plausible Fourth Amendment claim for false imprisonment in his complaint.[10]

Regarding the Eighth Amendment, it prohibits the infliction of "cruel and unusual punishments." See U.S. Const. amend. VIII. "[T]he detention of an inmate 'beyond the termination of [their] sentence . . . violate[s] the [E]ighth [A]mendment's proscription against cruel and unusual punishment if the 'incarceration [is] without penological justification.'" Beto v. Barkley, 706 F. App'x 761, 768 (3d Cir. 2017) (unpublished) (all alterations except first two alterations in original) (quoting Moore v. Tartler, 986 F.2d 682, 686 (3d Cir. 1993)).

---

[10] To the extent that the complaint could somehow be construed to contain a claim for malicious prosecution, Coote has not pleaded a plausible malicious prosecution claim because "[a] parole revocation hearing is not a criminal prosecution." See United States v. Manuel, 732 F.3d 283, 291 (3d Cir. 2013) (citing Morrisey v. Brewer, 408 U.S. 471, 480 (1972)). Instead, it is "a quasi-criminal proceeding at best, which does not rise to the level of a criminal proceeding as that term is understood in the context of a malicious prosecution." See Felker v. Christine, 796 F. Supp. 135, 141 (M.D. Pa. 1992), aff'd, 983 F.2d 1050 (3d Cir. 1992) (table decision).

Here, Coote essentially asserts that he is being wrongfully detained beyond the date of his original maximum sentence. To plausibly plead a claim "for [unlawful or] over[-]detention in violation of the Eighth Amendment," Coote must allege facts showing:

> (1) a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention.

See id. (quoting Montanez v. Thompson, 603 F.3d 243, 252 (3d Cir. 2010)).

Coote has failed to plead a plausible Eighth Amendment over-detention claim in this case because it is based on a flawed premise, namely, that the Parole Board lacked jurisdiction to "arrest" him, revoke his parole, and detain him after his original maximum sentence date expired. Under Pennsylvania law,

> [a] parolee "is in the legal custody of the Board until [he] completes the service of his maximum sentence or until the Board recommits [him] as a parole violator." Martin v. Pa. Bd. of Prob. & Parole, 576 Pa. 588, 840 A.2d 299, 303 (2003) (citing 37 Pa. Code § 63.2). Pennsylvania law provides that if a parolee, "during the period of parole . . . commits a crime punishable by imprisonment, for which the parolee is convicted or found guilty by a judge or jury or to which the parolee pleads guilty or nolo contendere at any time thereafter in a court of record," the Board has discretion to recommit the parolee as a parole violator. 61 Pa. Cons. Stat. § 6138(a)(1). The Board may order the parolee recommitted "to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted," unless the Board, in its discretion, allows credit for "street time." Id. § 6138(a)(2); see also 37 Pa. Code § 63.3 ("If the parolee violates the conditions of parole, at a time during his period on parole, the Board may cause his detention or return to a correctional institution.").
>
> The Pennsylvania Commonwealth Court has interpreted this provision to mean that the Board retains jurisdiction over the parolee beyond the expiration of the maximum sentence (referring to the original conviction) so long as the crime that leads to the second conviction occurred while the parolee was on parole for the original conviction. See, e.g., Miskovitch v. Pa. Bd. of Prob. & Parole, 77 A.3d 66, 73 (Pa. Commw. Ct. 2013) ("It is well-settled law that the Board retains jurisdiction to recommit an individual as a parole violator after the expiration of the maximum term, so long as the crimes that lead to the conviction occurred while the individual

13

>  is on parole."); Reavis v. Pa. Bd. of Prob. & Parole, 909 A.2d 28, 34 (Pa. Commw. Ct. 2006) (observing that "the Board retains jurisdiction to recommit a parolee convicted of a crime while on parole even after the expiration of a maximum sentence").

See id. at 768–69 (internal footnote omitted) (all alterations except first alteration in original).

Coote admits that he received early parole on August 28, 2014, but was then "summoned for a new criminal offense of theft by unlawful taking on October 17, 2014." See (Doc. No. 1 ¶ 14). This occurred prior to his maximum sentence date for his Monroe County convictions, i.e., October 1, 2018. (Id. ¶ 13.) Therefore, under 61 Pa. C.S. § 6138(a)(1), it is "of no consequence" that Coote's parole revocation hearing occurred after October 1, 2018, which was his controlling maximum sentence date, because the crime for which he acknowledges the Parole Board detained him occurred before that date. See Beto, 706 F. App'x at 769; see also United States v. Long-Parham, 183 F. Supp. 3d 746, 749 (W.D. Pa. 2016) (explaining that "[i]n accordance with [61 Pa. C.S. § 6138(a)(1)], the [Parole] Board is authorized to recommit a parolee who commits a crime punishable by imprisonment while [they are] on parole and is later found guilty by a judge or jury or to which [they] later plead guilty"). Thus, contrary to Coote's assertion in the complaint, the Parole Board retained jurisdiction to recommit him as a parole violator in December 2021, for his criminal charge in October 2014, committed while he was on parole. Because the Parole Board retained jurisdiction, Defendants did not unlawfully detain Coote or unlawfully extend his maximum sentence. Accordingly, Coote has failed to plead a plausible Eighth Amendment cruel and unusual punishment claim upon which relief can be granted. See Beto, 706 F. App'x at 769; see also Popichak v. Peurifoy, No. 23-cv-03678, 2023 WL 6810096, at *8–9 (E.D. Pa. Oct. 16, 2023) (concluding that plaintiff failed to state plausible Eighth Amendment claim where Parole Board recommitted him after expiration of his original maximum sentence for crime he committed prior to expiration of original maximum sentence).

Concerning the Due Process Clause of the Fourteenth Amendment, it provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." See U.S. Const. amend. XIV, § 1.  This Clause "confers both substantive and procedural rights."  See Albright v. Oliver, 510 U.S. 266, 272 (1994).  Here, Coote states that he asserts Section 1983 claims for violations of his procedural and substantive due process rights under the Fourteenth Amendment.  (Doc. No. 1 ¶¶ 19–21.)  As explained below, he has failed to state a plausible claim for a Fourteenth Amendment procedural or substantive due process violation.

Turning first to procedural due process, although prisoners such as Coote "do not shed all constitutional rights at the prison gate, lawful incarceration 'brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'"  See Sandin v. Conner, 515 U.S. 472, 485 (1995) (internal citation omitted) (quoting Jones v. N.C. Prisoners' Lab. Union, Inc., 433 U.S. 119, 125 (1977)).  For Coote to plead a plausible claim for a violation of his procedural due process rights, he must allege "(1) that the state deprived him of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of law."  See Burns v. PA Dep't of Corr., 544 F.3d 279, 285 (3d Cir. 2008) (citations omitted).

In this case, Coote alleges that he was deprived of a liberty interest insofar as he was incarcerated for a parole violation after his maximum sentence date.  (Doc. No. 1 ¶ 21.)  However, he fails to include any factual allegations in his complaint showing that he was incarcerated without due process of law.[11]  Instead, his allegations pertaining to a due process

---

[11] The minimum due process requirements for a parole revocation hearing are:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine

15

violation purely relate to his mistaken belief that the Parole Board did not have jurisdiction to reincarcerate him. He does not allege that he was not given notice of his violation or a hearing to contest the violation.[12] As such, he has failed to plead a plausible procedural due process violation.

As for Coote's substantive due process claims, the Court recognizes that "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." See Foucha v. Louisiana, 504 U.S. 71, 80 (1992). To plead a plausible substantive due process claim, a plaintiff must include sufficient allegations establishing "that the particular interest at issue is protected by the substantive due process clause, and that the government's deprivation of that protected interest shocks the conscience." See Kane v. Barger, 902 F.3d 185, 192 (3d Cir. 2018) (citations and internal quotation marks omitted); see also County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998) (explaining that plaintiff asserting substantive due process claim must allege conduct that is "arbitrary[] or conscious shocking"). "This standard's stringency reflects

---

    adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

See Morrissey, 408 U.S. at 489.

[12] Coote alleges that he "exhausted all of his administrative remedies with the [Parole Board]." See (Doc. No. 1 ¶ 10). However, he does not allege that he appealed from the Parole Board's decision to the Commonwealth Court of Pennsylvania, which he was entitled to do. See Commonwealth v. Fells, 518 A.2d 544, 544 (Pa. 1986) (indicating that Pennsylvania inmates can challenge Parole Board's revocation decision by appealing to the Commonwealth Court); Borsello v. Colleran, 833 A.2d 1213, 1215 (Pa. Commw. 2003) (pointing out that Commonwealth Court has "exclusive jurisdiction over parole revocation appeals").

maintenance of the proper proportions of constitutional, as opposed to ordinary tort, violations." Blain v. Twp. of Radnor, 167 F. App'x 330, 333 (3d Cir. 2006) (unpublished) (citing Lewis, 523 U.S. at 847 n.8).

Coote's substantive due process claims fail because of the "more-specific-provision rule," which provides that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010) (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)).  Because Coote's claims are covered by specific constitutional provisions, i.e., the Fourth and Eighth Amendments, he cannot maintain separate substantive due process claims.

### 4. Claim for Monetary Damages Based on a Violation of the Pennsylvania Constitution

As best this Court can discern, Coote attempts to assert a claim for monetary damages because Defendants allegedly violated his due process rights under the Pennsylvania Constitution.  (Doc. No. 1 ¶ 20.)  The Court will dismiss this claim because there is no private right of action for monetary damages under the Pennsylvania Constitution.  See Plouffe v. Cevallos, 777 F. App'x 594, 601 (3d Cir. 2019) (unpublished) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution."); Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist., 442 F. App'x 681, 687 (3d Cir. 2011) (unpublished) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution."); Jones v. City of Phila., 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006) ("[N]either Pennsylvania statutory authority nor appellate

case law has authorized the award of money damages for violation of the Pennsylvania Constitution.").[13]

### C. Leave to Amend

Having determined that Coote's claims against Defendants are subject to dismissal, the Court must determine whether to grant him leave to file an amended complaint. Courts should generally give leave to amend but may dismiss a complaint with prejudice where leave to amend would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); see also Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile."). "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

---

[13] The Court recognizes that due to the dismissal of Coote's federal claims, the Court may decline to exercise supplemental jurisdiction over his claims under the Pennsylvania Constitution. See 28 U.S.C. § 1367(c) (stating that a district court may decline to exercise supplemental jurisdiction over state-law claims if "the district court has dismissed all claims over which it has original jurisdiction"). The Court also recognizes that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." See Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir.1995) (emphasis added). In this case, the Court finds that considerations of judicial economy, convenience, and fairness to the parties, warrants the exercise of supplemental jurisdiction over Coote's state-law claims. In particular, it is much more convenient, economical, and fair to the parties for the Court to resolve Coote's meritless claim under the Pennsylvania Constitution here.

In this case, the Court finds that Coote cannot correct any of the above-referenced defects in his complaint. Accordingly, the Court will not permit Coote to file an amended complaint because allowing him to do so would be futile.

IV. **CONCLUSION**

For the reasons discussed above, the Court will grant the IFP Application, dismiss the complaint without providing Coote with leave to amend, and direct the Clerk of Court to close the case. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
